UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LARRY JORDT,<br><br>Plaintiff,<br><br>vs.<br><br>FEDEX FREIGHT, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:13-cv-481 CW<br><br>Judge Clark Waddoups |

FedEx Freights, Inc. ("FedEx.") terminated Plaintiff Larry Jordt on August 23, 2011. Jordt asserts he was terminated in violation of the Age Discrimination in Employment Act ("ADEA") and the Family Medical Leave Act ("FMLA"). At the time of his termination, Jordt was fifty six years old and on intermittent leave under FMLA for himself and his wife.

FedEx moved for summary judgment on Jordt's ADEA and FMLA claims. The court held a hearing on the motion on January 21, 2015 and hereby orders, for reasons stated on the record, and articulated more fully herein, that FedEx's motion is denied.

## FACTUAL BACKGROUND

Jordt was hired by Viking Freight on October 16, 1985 and continued working for Viking Freight until it was acquired by FedEx Freight West in 2002. Through a series of mergers, Jordt ultimately started working in the North Salt Lake ("NSL") office of FedEx Freights, Inc. on or about January 30, 2011. Prior to working at the NSL office, Jordt presented evidence that he had

a solid performance record for 25 years.

Before and after the merger in 2011, Jordt had a set line he drove each day from Salt Lake City, Utah to Carlin, Nevada and back. When returning from Carlin, Jordt stopped in Wendover, Utah on occasion to gamble. Jordt presented evidence that this was not an uncommon practice among the drivers who had access to gambling facilities and it was known by management.

After Jordt allegedly was late returning to the truck yard on a few days, rather than discussing Jordt's arrival times, the Service Center Manager, Chuck Burr, placed a GPS monitor on Jordt's truck. When Burr learned Jordt's stops in Wendover exceeded the allotted one hour break time, he confronted Jordt on August 18, 2011. Based on Jordt's allegedly incorrect daily logs, false response to Burr's questioning, and failure to follow instructions about FedEx's meal break policies, Jordt was terminated six-and-a-half-months after transferring to the NSL office.

## ANALYSIS

### I. ADEA CLAIM

#### A. Prima Facie Case

Jordt seeks to prove age discrimination through circumstantial evidence. "When a plaintiff seeks to prove age discrimination under the ADEA using circumstantial rather than direct evidence," the Tenth Circuit has applied "the *McDonnell Douglas* burden-shifting approach."[1] *Roberts v. IBM*, 733 F.3d 1306, 1309 (10th Cir. 2013). Under that three-step

[1] Following the Supreme Court's ruling in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Tenth Circuit held that *Gross* did not disturb "the *McDonnell Douglas* three-step analysis to prove age discrimination under the ADEA." *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010). Accordingly, the court applies it here.

approach, the terminated employee must "make a prima facie case of discrimination." *Id.* If he does so, "the burden shifts to the employer to articulate a nondiscriminatory reason for firing the employee." *Id.* The burden then shifts back to the employee to identify a basis from which a reasonable jury could conclude the employer's "proffered rationale is a mere pretext for discrimination." *Id.* (citation omitted).

The parties disagree with respect to what elements are necessary to establish a prima facie case. This is not surprising because the second and fourth elements are not well-established in the Tenth Circuit. For the second element, at times, the Tenth Circuit has stated the employee must show he was performing satisfactory work. *See Zoutomou v. Kennecott Utah Copper*, 550 Fed. Appx. 647, 651 (10th Cir. 2013) (citing *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)). At other times, the Court has stated the second element merely requires the employee to show he was qualified for the position. *See Hutchins v. Cessna Aircraft Co.*, 2014 U.S. App. LEXIS 20891, at *4 (10th Cir. Oct. 30, 2014 (citing *Jones*, 617 F.3d at 1279). Jordt aptly points out that requiring him to establish satisfactory performance at the prima facie stage would conflate it with FedEx's burden of showing he was terminated for a non-discriminatory reason. The court therefore concludes Jordt must merely prove he was qualified for the position to satisfy the second element.

With respect to the fourth element, the Tenth Circuit has articulated that element in various ways. One articulation is that the employee must prove he was replaced by a younger person. *See Zoutomou*, 550 Fed. Appx. at 651 (citing *Adamson*, 514 F.3d at 1146). Another articulation is that the employee must prove his "job was not eliminated after his discharge." *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1165 (10th Cir. 2000) (quotations, citation, and alteration omitted). A third articulation requires the employee to prove he "was treated less

favorably than others not in the protected class."[2] *Hutchins*, 2014 U.S. App. LEXIS 20891, at *4 (citing *Jones*, 617 F.3d at 1279). A fourth articulation is that the employee must show he "has *some* evidence the employer intended to discriminate against him or her in reaching its . . . decision." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008) (citation omitted) (emphasis in original).

The disparity among these decisions, with respect to the fourth element demonstrates the difficulty of setting forth an element that captures the multitude of situations in which age discrimination may occur. To address this, some courts have adopted a totality of the circumstances approach for the fourth element. *See e.g.*, *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999) (addressing various ways the fourth element may be proved to establish a prima facie case under *McDonnell Douglas*). This flexible approach appears to be in harmony with the Supreme Court's statement in *O'Conner* that "the prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Conner*, 517 U.S. at 312 (quotations, citation, and alterations omitted). Moreover, the Tenth Circuit has stated "the appropriate formulation of the prima facie case is flexible, looking to those logically salient circumstances of each case that may raise the requisite inference of discrimination." *Medlock v. United Parcel Serv.*, 608 F.3d 1185, 1191 n. 5 (10th Cir. 2010) (citation omitted) (rejecting that a prima facie case always requires showing an employee was replaced by a younger employee); *see also Hare v. Denver Merch. Mart, Inc.*, 255 Fed. Appx. 298, 302 (10th Cir. 2007) (stating "[i]n this Circuit the fourth element of a *prima facie* case is a flexible one that can be satisfied differently in varying scenarios" (quotations and

---

[2] To the extent the Tenth Circuit is stating that an employee must prove he was treated less favorably than those under age 40, this appears to run contrary to the Supreme Court's holding in *O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

citation omitted)).

Thus, to meet his prima facie burden, the court concludes Jordt must show (1) he belongs to a protected class, (2) he was qualified for his job, (3) that despite his qualifications, he suffered an adverse employment action, and (4) he has some evidence to create an inference the employment decision was based on an illegal discriminatory criterion. "The burden on [Jordt] to establish a prima facie case under the *McDonnell Douglas* framework is not onerous." *Hare*, 255 Fed. Appx. at 303 (citation omitted). Moreover, as a nonmovant, he "is only required to bring forth evidence *tending* to establish or show the material fact at issue." *Id.* (quotations and citation omitted) (emphasis in original).

Jordt was fifty-six at the time of his termination. He had been a truck driver with FedEx and a predecessor for almost twenty-six years and had driven the Salt Lake City, Utah to Carlin, Nevada line for five years, without incident. On August 23, 2011 he was terminated. Jordt has therefore shown (1) he is a member of the protected class, (2) he was qualified for his job, and (3) that he suffered an adverse employment action despite his qualifications. The first three elements are therefore met for purposes of summary judgment.

With respect to the fourth element, the Tenth Circuit has held that *retaining* a younger employee over an older employee satisfies an employee's burden to come forward with some evidence that the termination decision was based on a discriminatory criterion. *See Hinds*, 523 F.3d at 1196 (citing *Krause v. Dresser Industries, Inc.*, 910 F.2d 674, 677 (10th Cir. 1990) for the proposition that the fourth element is satisfied when an employer *retains* a younger employee over an older employee during a reduction in force). Jordt transferred to the NSL office on or about January 30, 2011 due to a merger between FedEx Freight Regional and FedEx National LTL. As a result of the merger, FedEx decided to eliminate twelve truck driver positions.

Initially, FedEx attempted to eliminate the positions by offering voluntary severance packages. Jordt rejected the offer. Nevertheless, from the date of the merger until Burr took another position in September 2012, FedEx did terminate twelve drivers. Spreadsheet re Driver Status (Dkt. No. 35, Ex. 10, Attach. 1). Of those twelve, nine were over the age of forty. Drawing all inferences in the light most favorable to Jordt, a reasonable jury could conclude that Burr terminated Jordt in an effort to retain younger employees over older employees. When this is coupled with evidence that Jordt had a solid performance record for more than 25 years, yet was the only truck driver terminated for a log violation following the merger, the court concludes Jordt has come forward with sufficient evidence to meet his obligation at the summary judgment stage.

**B. Nondiscriminatory Reason for Termination**

Under the second step of the *McDonnell Douglas* analysis, FedEx must come forward with a legitimate, non-discriminatory reason for Jordt's termination. *Adamson*, 514 F.3d at 1145 (citation omitted). FedEx has met this burden for purposes of its summary judgment motion. Specifically, after Jordt returned to the NSL office later than "expected" on a few occasions,[3] Burr placed a GPS monitor on his truck. The tracking device showed that Jordt was taking breaks in Wendover that exceeded one hour in violation of company policy. Yet, on his log sheet, Jordt either did not record the break or he recorded it for a shorter period.

Burr then sent an investigator to Wendover to photograph Jordt at the casino where he stopped to obtain further confirmation that Jordt's stops exceeded one hour. After the investigator took time-stamped pictures on August 17, 2011, Burr confronted Jordt on August

---

3 The evidence is at best ambiguous about whether FedEx had clearly told Jordt the required return time.

18, 2011. He asked Jordt to provide a written statement about his schedule for the prior day. Jordt reported a shorter break and earlier return time to the NSL office than Burr's evidence reflected. Because Jordt allegedly (1) failed to follow instructions about the length of breaks, (2) failed to complete his logs accurately, and (3) provided a false written statement, Burr suspended Jordt immediately and recommended his termination. That recommendation was reviewed through two different HR levels and approved. FedEx has therefore come forward with legitimate, non-discriminatory reasons for Jordt's termination.

**C. Pretext**

Because FedEx provided legitimate, non-discriminatory reasons for Jordt's termination, Jordt "can avoid summary judgment only if he is able to show that a genuine dispute of material fact exists as to whether the defendant's articulate reasons are pretextual." *Hare*, 255 Fed. Appx. at 304 (quotations, citation, and alteration omitted). The Tenth Circuit has held,

> A plaintiff produces sufficient evidence of pretext when [he] shows such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Jones*, 617 F.3d at 1280 (quotations and citation omitted). "[O]nce a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." *Id.* (quotations and citation omitted).

FedEx allotted Jordt ten hours to drive his line and return to the NSL office. Jordt had a 7:45 a.m. gate time, meaning that he departed the gate for Carlin, Nevada at 7:45 a.m. In order to complete his pre-trip inspection and other pre-trip activities, Jordt usually arrived at work at

7:00 a.m. Leon Van, the Operations Manager, testified that Jordt's ten hour schedule commenced when Jordt departed the gate. Yet, Burr testified the ten hour schedule commenced at 7:00 a.m. so Jordt was expected to be back to the NSL office by 5:00 p.m.

The allotted drive time for Jordt's route was 8.5 hours, with a ¼ hour allotment for a pre-trip inspection in Carlin, Nevada. Jordt testified, however, that the turn-around in Carlin often took 30 to 40 minutes. Viewing the evidence in the light most favorable to Jordt, this meant the combined drive time and turn-around time was 9 hours. If an additional 45 minutes is added to account for the time between 7:00 a.m. and Jordt's 7:45 a.m. gate departure time, that means Jordt only had ¼ hour for a break during his 10 hour day, in contravention of FedEx's stated meal/break policy.[4] Burr's version of when Jordt's 10-hour-day commenced is therefore implausible.

This fact is significant because it shows the details in the Corrective Action Recap ("Recap") are exaggerated and biased against Jordt. The Recap was completed by Brenda Shipley, the first HR person who reviewed Burr's recommendation to terminate Jordt. It states the following:

> Road Dispatch
> August 4, 2011 – Gate time: 07:43 – Returned: 18:30 – (1.30 late)
> August 5, 2011 – Gate time: 07:47 – Returned: 18:43 – (1.43 late)
> August 10, 2011 – Gate time: 07:37 – Returned: 18:39 – (1.39 late)
> August 15, 2011 – Gate time: 07:44 – Returned: 18:23 – (1.23 late)
> August 17, 2011 – Gate time: 07:48 – Returned: 18:32 – (1.32 late)

Corrective Action Recap, at 1 (Dkt. No. 19, Ex. 9). If Jordt arrived at 6:30 p.m. (18:30 military time) on August 4, 2011, and was 1 ½ hours late, as the Recap states, this means his late time

---

[4] FedEx policy states, "All tours of duty over 8-hours on-duty are entitled to 1-hour of breaks. Break time should not exceed 1 hour for a complete tour of duty." Driver Manual Supplement, at 27 (Dkt. No. 19, Ex. 2).

was calculated based on an expected arrival time of 5:00 p.m. Hence, to justify Jordt's termination, FedEx used the exaggerated start time of 7:00 a.m. and end time of 5:00 p.m.

Next, FedEx exaggerated his actual arrival time. For example, on August 17, 2011, FedEx asserts Jordt arrived at 6:32 p.m. (18:32 military time). Yet, the guard gate log and GPS showed his arrival times as 6:07 p.m. Rather than using his actual arrival time, FedEx used the time when Jordt logged into a computer at a kiosk following the post-trip, break down of his tractor and trailers. Burr Hearing Tr., 11:26-28 (Dkt. No. 29, Ex. 3). Were one to use a start time of 7:45 a.m. (as the Operation Manager and drivers thought it to be) and Jordt's actual arrival time at 6:07 p.m., this decreases the time of him being late from 1.32 hours down to 21 minutes on August 17, 2011. The exaggerated representations by Burr and Shipley show inconsistencies and raise veracity issues.

Jordt also provided evidence that drivers were not informed about a specific time by which they had to return to the NSL office. Burr testified that a bid sheet, posted in a break room for seven days before the merger, informed the drivers about their return time. The bid sheet, however, was not produced in this case. Additionally, when questioned about what impact Jordt's late return had had, the Operations Manager testified they kept no records about when freight failed to transfer to another trailer due to Jordt's alleged late arrival. Moreover, no evidence was presented that FedEx suffered any type of financial impact as a result of Jordt's actions. Although FedEx has built its business on timely deliveries, a reasonable jury may question how material Jordt's arrival times were when drivers were not told to be back by a specific time and no records were kept about missed freight transfers.

Jordt was not paid by the hour. He was paid by the mile. Hence, he did not benefit financially from taking longer stops in Wendover. Moreover, following the merger, FedEx's

meal and break time policy, including what would occur for policy violations, was not entirely clear.[5] The policy stated FedEx would afford progressive corrective action to hourly-compensated and salaried non-exempt employees who violated the meal and break time policy. It then detailed what corrective action would occur for violations. Immediately thereafter, it stated, "[i]*n addition to the above*, mileage compensated . . . employees may also be subject to immediate termination for compensated time violations." Meal Period and Rest Break Policy, at 6 (Dkt. No. 29, Ex. 2) (emphasis added). Based on how the policy was phrased, it was ambiguous as to whether the progressive action plan stated immediately above would apply to mileage compensated employees.

This ambiguity was further perpetuated by language on a Corrective Action Process that informed Jordt

> Failure to follow the meal policy will result in the following corrective action: Within a rolling 6 months: 1 attendance point coaching, 2 attendance points coaching, 3 attendance points, written notice, 4 attendance points, written notice, 5 attendance points critical notice and a 90 day probation. Occurrence of any absence or tardy during the 90-day probationary period will result in termination.

Correction Action Process (Dkt. No. 29, Ex. 5). From this, a reasonable jury may conclude that Jordt was entitled to progressive corrective action and that FedEx did not afford it to him when he took longer breaks than allowed. Not only was Jordt not given progressive corrective action, the evidence support that he was not even given a warning about his late arrival or longer breaks in Wendover. Such a failure to give a warning could be found by a jury as evidence of pretext for a driver who had been a successful driver for twenty-six years.

Another factor contributing to Jordt's showing of pretext it that the proffered reasons why

---

[5] FedEx did provide policy training about meal and break times, but it was not done until November 2011, about three months after Jordt's termination.

Jordt was terminated evolved and changed. Jordt testified both Burr and Katyna Naylor, HR Manager, told him he was being terminated because he went into a casino in Wendover wearing a FedEx uniform. Additionally, the Corrective Action Recap, drafted by Shipley, states that part of the reason Jordt was being terminated was due to "Theft of company time." Corrective Action Recap at 2 (Dkt. No. 19, Ex. 9). Naylor had to remove this proffered reason, however, because Jordt was paid by the mile rather than by time. Hence, he could not have committed theft of company time. Additionally, when Burr called Jordt into his office on August 18, 2011, before Jordt's run that day, Jordt had not turned in his log for the previous day. Therefore, Burr had no knowledge about what Jordt had recorded on his August 17th log at the time he confronted Jordt.

Finally, the evidence shows that nine out of the twelve drivers terminated under Burr's watch were over the age of 40. This is so despite FedEx stating earlier that it would use the drivers' seniority when "determining who will remain employed." Voluntary Severance Decision Form (Dkt. No. 19, Ex. 1).

When this evidence, along with other evidence stated on the record, is viewed in the light most favorable to Jordt, the Court concludes that Jordt has shown sufficient inconsistencies, implausibilities, contradictions, and questions about veracity to create a genuine factual dispute. The court therefore denies summary judgment on Jordt's ADEA claim.

## II. FMLA CLAIM

Jordt asserts FedEx interfered with his FMLA rights and retaliated against him for exercising those rights. "The plaintiff's burden at the prima facie stage requires only a small amount of proof necessary to create an inference of discrimination or retaliation." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014) (quotations and citation omitted).

**A. Interference**

To establish a claim for interference under the FMLA, it must be proved "(1) that [Jordt] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [his] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [his] FMLA rights." *Dalpiaz v. Carbon County, Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014) (quotations and citation omitted). Interference therefore occurs "when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Id.* (citation omitted).

Jordt testified that FedEx did not approve leave for medical appointments unless an employee applied for leave under FMLA. Because both he and his wife had a serious medical condition, Jordt applied and was approved for intermittent FMLA leave. In early June 2011, Jordt informed the Hub Planner, Joe Doxford that he would be taking FMLA leave on June 20, 2011. When Jordt returned to work on June 22nd, he could not sign in because he had been locked out of the computer. Jordt was told to report to Steve Olander, the Assistant Manager for the NSL office. Olander informed him that he had an unexcused absence for the prior day because his FMLA leave had lapsed. Up to that point, Jordt had never had an unexcused absence. *See* Correction Action Process (Dkt. No. 29, Ex. 5). Jordt explained he thought he had authorized leave and would immediately reapply.

On June 28, 2011, Jordt submitted an application to renew intermittent FMLA leave for himself and his wife. Shortly thereafter, Jordt again told Doxford that he would be taking FMLA leave, this time on July 14, 2011 for his wife's MRI. Doxford responded: "Oh, how convenient, it's your birthday . . . I think people are taking advantage of this and not using it for FMLA." Jordt Depo. At 47 (Ex. 1). During this same period, Leon Van, the Operations Manager, and

Doxford started looking into Jordt's arrival times and raised the issue with Burr. *See* Decl. of Leon Van, ¶¶ 6-8 (Dkt. No. 19, Ex. 8).

While Jordt was on FMLA leave on July 28-29, 2011, Burr had a GPS monitor placed on Jordt's FedEx truck. Until Jordt, Burr had never used a GPS to monitor an employee. Jordt was terminated about three weeks later. Burr asserts he had no knowledge of the dates Jordt actually took FMLA leave. Burr nevertheless knew that Jordt had applied and been approved for ongoing, intermittent FMLA leave.

When these facts are viewed in the light most favorable to Jordt, a reasonable jury could infer management at the NSL office had a cultural attitude against employees using intermittent FMLA leave. Moreover, the temporal proximity between Jordt's requests for leave and the adverse actions taken against Jordt provide further support for Jordt's claims. The court therefore denies summary judgment on Jordt's claim for interference.

**B. Retaliation**

The elements for a retaliation claim are similar to those for interference, but are not the same. To establish a claim for retaliation, Jordt must show he: "(1) availed [himself] of a protected right under the FMLA; (2) was adversely affected by an employment decision; and (3) that there was a causal connection between the two actions." *McClelland v. CommunityCare HMO, Inc.*, 503 Fed. Appx. 655, 659 (10th Cir. 2012) (quotations and citation omitted). In contrast to an interference claim, "a retaliation claim may be brought when the employee successfully took FMLA leave, was restored to [his] prior employment status, and was adversely affected by an employment action based on incidents post-dating [his] return to work." *Dalpiaz*, 760 F.3d at 1132 n.3 (citation omitted).

Although an interference claim differs from a retaliation claim, the same facts that

support Jordt's interference claim also support his claim that FedEx retaliated against him for using FMLA leave. When the facts are viewed in the light most favorable to Jordt, they are sufficient to create a material issue of fact. Thus, the court denies summary judgment on Jordt's claim for retaliation.

## CONCLUSION

For the reasons stated on the record during the January 21, 2015 hearing, and more fully articulated above, the court DENIES FedEx's motion for summary judgment. (Dkt. No. 19).

DATED this 27th day of January, 2015.

BY THE COURT:

Clark Waddoups
United States District Judge